IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TOBER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:07cv1252 (LMB/TCB) |
| ) | |
| APROV.COM, ) | |
| ) | |
| In Rem Defendant. ) | |

<u>MEMORANDUM OPINION</u>

On July 21, 2008, a magistrate judge issued a Report and Recommendation ("Report") in which she recommended that service of process be found sufficient and that the defendant domain name be found in default. However, she also recommended that the plaintiffs' motion for transfer of the domain name be denied and that the civil action be dismissed without prejudice. The parties were advised that any exceptions to the Report had to be filed within ten days of receipt of the Report and that failure to file a timely exception waived appellate review of any judgment based on the Report. As of September 22, 2008, only the plaintiffs have objected to the magistrate judge's recommendation that the Court deny the motion to transfer and dismiss their complaint.

A review of the case file establishes that the Report's findings on service of process and the default status of the defendant are factually and legally supported by the record. Accordingly, they are fully adopted as the conclusions of the Court. The magistrate judge's recommendation to dismiss the

complaint will also be adopted by the Court, although for reasons different from those found by the magistrate judge.

## Discussion

On May 13, 2008, the magistrate judge denied without prejudice the plaintiffs' Motion for an Order to Transfer the Domain Name. In the July 21, 2008 Report, the magistrate judge anticipated that the plaintiffs would re-file their motion for transfer after resolution of the publication issue and the entry of default. Therefore, she also addressed the transfer issue, recommending that transfer be denied. The magistrate judge also recommended that no award be made to the plaintiffs and that the complaint be dismissed without prejudice.

The plaintiffs have objected to this conclusion, arguing that it 1) ignored or rejected facts alleged in the uncontested complaint in denying transfer and improperly applied Fed. R. Civ. P. 12(b)(6), 2) ignored the plaintiffs' allegations and supporting evidence establishing its common law trademark rights, and 3) directed an inappropriate remedy by issuing a _sua sponte_ dismissal of the motion, instead of allowing for supplementation of the record. This Court reviews _de novo_ findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1).

The uncontested facts establish that plaintiffs Tober and Skeat are a married couple who founded Agency Provocateur in 2001. Agency Provocateur is an introduction and escort agency

that operates in London, England.  Plaintiff Tober purchased the domain names <agency-provocateur.com> and <agency-provocateur.co.uk> on or about May 21, 2001 and May 23, 2001, respectively.  On or about April 3, 2002, the plaintiff corporation, IXIS, which appears to be a translation services business, registered the defendant domain name <aprov.com>.  The plaintiffs allege that <aprov.com> was intended to be an abbreviation of <agency-provocateur.com> that was easier to remember and spell.  The content on <aprov.com> was identical to that available on <agency-provocateur.com>.  The plaintiffs conducted their introduction and escort business through these websites.

On September 29, 2007, the <aprov.com> website went offline. The plaintiffs believe that someone gained access to their email and altered the login information for the domain name manager account and the contact information for <aprov.com>.  As a result, the plaintiffs were, and currently are, unable to access the domain name manager for <aprov.com>.  The Agency Provocateur business now operates at <www.aprov.co.uk>, which Tober also owns.

On December 13, 2007, plaintiffs filed a complaint against the defendant domain name, alleging a violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and seeking an order directing the transfer of the defendant domain name under 15 U.S.C. § 1125(d)(2).  The

3

ACPA states that "a person shall be liable in a civil action by the owner of a mark" if that person engages in certain activities prohibited by the statute. 15 U.S.C. § 1125(d)(1)(A). Pursuant to 15 U.S.C. § 1125(d)(1)(A), the plaintiffs properly alleged that 1) the registrant "had a bad faith intent to profit from the goodwill of Plaintiffs' APROV mark" and 2) the domain name <www.aprov.com> is "identical or confusingly similar to, or dilutive of, the APROV mark," which was distinctive and famous. See Lamparello v. Falwell, 420 F.3d 309, 318 (4th Cir. 2005) (describing the elements of one cause of action under the ACPA). The magistrate judge, however, found that the plaintiffs had failed to state a claim under the statute because she concluded the plaintiffs were "not owners of the mark and thus [did] not have any rights in it." She determined that the plaintiffs' evidence of their use of the Aprov mark, which she described as limited to their use of the domain name at issue and the contents of the website found there, was not sufficient to allege common law trademark rights.

In their complaint, the plaintiffs allege that they have common law trademark rights in the Aprov mark. "At common law, trademark ownership is acquired by actual use of the mark in a given market." Emergency One, Inc. v. Am. Fire Eagle Engine Co., 332 F.3d 264, 267 (4th Cir. 2003). The party claiming ownership must also demonstrate that it was the first to use the mark in the sale of goods or services. Id.

4

The use of a mark in a domain name and on a website may be sufficient to create common law trademark rights. A leading commentator has endorsed the view that "a domain name can become a trademark if it is used as a trademark," meaning that it "is used to identify the source of goods and services." 1 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 7:17.50, at 7-29 (4th ed. 2008). Courts have also accepted this proposition. <u>See, e.g., Lockheed Martin Corp. v. Network Solutions, Inc.</u>, 985 F. Supp. 949, 956 (C.D. Cal. 1997) ("Like trade names, domain names can function as trademarks . . . ."); <u>cf.</u> <u>Brookfield Communs., Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1055 (9th Cir. 1999) ("The domain name is more than a mere address: like trademarks, second-level domain names communicate information as to source."). McCarthy observes that the "key is whether the designation claimed as a protectable mark has been used to make such a visual impression that the viewer would see it as a symbol of origin separate and apart from anything else." <u>See</u> McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 7:17.50, at 7-38.

Plaintiffs allege upon information and belief that they were the first to use the Aprov mark and that there are no other entities using the Aprov mark. The plaintiffs also allege that they registered <aprov.com> on or about April 3, 2002 and that they have been continuously and extensively using the Aprov mark in connection with their introduction and escort business in the

London market. In support of their allegations, the plaintiffs have provided screen shots of <aprov.com> and <agency.provocateur.com> that prominently display "Aprov" across the top of the sites in large and distinctive type.[1] They have also provided screen shots of other websites that appear to display advertisements for <aprov.co.uk> and evidence that additional websites identify Aprov as a London escort agency. The pleadings and the supplemental evidence adequately allege that the plaintiffs were using the Aprov mark to identify their introduction and escort business on their websites and on the internet.[2] Although it is a close call, in this default posture, the Court finds that the complaint sufficiently alleges priority and use of the mark and, thus, that the plaintiffs had common law trademark rights in the Aprov mark. See Emergency One, 332 F.3d at 267. However, the plaintiffs still fail to establish that they are entitled to relief because they have not adequately plead that the Aprov mark was used in commerce in the United States or in foreign trade with the United States.

To establish a protected interest in an unregistered

---

[1] The screen shots of <aprov.com> and <agency.provocateur.com> were attached as exhibits to the plaintiffs' motion to transfer the defendant domain name.

[2] To the extent that plaintiffs argue that they use the Aprov name commercially, the Court notes that the overwhelming majority of the plaintiffs' exhibits demonstrate that the plaintiffs use the IXIS name, not the Aprov mark, in conducting business activities. See Compl. Exs. J, K, M, O, Q, R, S, T, U, V.

trademark, an owner must show that the mark is 1) used in commerce and 2) distinctive. See Internat'l Bancorp, LLC v. Societe des Bains de Mer, 329 F.3d 359, 363 (4th Cir. 2003). These requirements, derived from the Lanham Act, apply to actions brought under the ACPA. Barcelona.com v. Excelentisimo Ayuntamiento, 330 F.3d 617, 627-29 (4th Cir. 2003). Furthermore, the Fourth Circuit has held that in this context, "'commerce' . . . is coterminous with that commerce that Congress may regulate under the Commerce Clause of the United States Constitution." Internat'l Bancorp, 329 F.3d at 364. Commerce includes interstate commerce and foreign trade. Id. Accordingly, to qualify for protection under the ACPA, the plaintiffs must allege that their mark was used in commerce in the United States or was used in foreign trade with the United States. See Maruti.com v. Maruti Udyog Ltd., 447 F. Supp. 2d 494, 498-99 (D. Md. 2006). If the mark is used in foreign trade, the mark "must be distinctive among United States consumers." Internat'l Bancorp, 329 F.3d at 370.

Plaintiffs have failed to allege that their mark was used in commerce in the United States or in foreign trade with United States citizens. Indeed, plaintiffs merely allege that their business offers introduction and escort services in the London area. They also assert that the business is a "London-based business with all of its contacts in London." As to the distinctiveness of the mark, the plaintiffs simply allege that

the Aprov mark is distinctive and "famous in the relevant market of London, and beyond." These allegations are not sufficient to state a claim that the Aprov mark was used in commerce in the United States or used in foreign trade with United States citizens. See Internat'l Bancorp, 329 F.3d at 364-70.

## Conclusion

For the above-stated reasons, the Court finds that the plaintiffs have failed to state a claim under the ACPA. Accordingly, the Court will overrule the objections of the plaintiffs and affirm the magistrate judge's recommendation to dismiss the complaint without prejudice.[3]

A separate order consistent with this memorandum opinion will accompany this opinion.

Entered this 23rd day of September, 2008.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[3] The plaintiffs' Motion for an Order to Transfer the Domain is not properly before the Court because it was dismissed without prejudice on May 13, 2008 and has not been renewed. Moreover, the Court's decision to dismiss the complaint renders any motion to transfer moot.